114 So.2d 292

**John Thomas BLACK**

**v.**

**STATE.**

**8 Div. 557.**

Court of Appeals of Alabama.

Aug. 18, 1959.

W. L. Chenault, Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and Jerry L. Coe, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

This appellant was indicted for, and found guilty of, transporting prohibited alcoholic beverages in quantities of five gallons or more.

The State's case was presented to the jury on the theory of conspiracy, and the court fully instructed the jury as to the principles of conspiracy in its oral charge.

Wilber Abercrombie, Milton Thomas, and Richard Hyche, deputy sheriffs of Morgan County were the principal witnesses for the State.

Their testimony tended to show that on 1 June 1958 deputies Abercrombie and Thomas followed appellant's truck to his home. Appellant parked near a small coal house, and proceeded to remove some pasteboard boxes and five-gallon G. I. cans from the coal house and load them in his truck. Appellant then drove to the home

of Walter Ellison. Ellison came out of his home and got into appellant's truck and remained therein about ten or fifteen minutes. Ellison then left the truck and got into a Plymouth automobile, and proceeded to follow appellant's truck as he drove off, trailing some forty or fifty yards behind the truck.

The deputies followed the truck and car some seven or eight miles, until they had gotten over into Lawrence County.

The two deputies then returned to the jail and obtained the Sheriff's car and returned to a point about a mile from the Lawrence County line on the highway down which they had followed the truck and Plymouth. Deputy Hyche accompanied deputies Abercrombie and Thomas on this trip.

At this point they parked in a cut on the side of the road.

Between 10:00 and 11:30 P. M. they observed the truck and Plymouth returning down the highway, the truck in front. The officers recognized the appellant as the driver of the truck, and Ellison as the driver of the Plymouth.

The officers followed, and after about a mile or a mile and a half the truck and Plymouth turned into a road on the left. After the two lead vehicles had gone 300 or 400 yards down this second road the officers tried to pass, but the Plymouth would pull in front and block their passage. Finally they did pass the Plymouth, and proceeded on and stopped the truck. They searched the truck but found only a pasteboard carton with four empty glass jugs therein.

The appellant was released and the officers returned down the road in search of the Plymouth.

This car was located about 200 yards away, on the side of the road. Ellison was not around. Searching the car the officers found therein fourteen five-gallon G. I. cans full of corn whiskey. The cans were of the same type they had seen the appellant loading in his truck earlier in the day.

They also found in the Plymouth thirty-two one-gallon glass jugs filled with corn whiskey.

Deputy Hyche testified additionally that about eight days before he had looked into the coal house at appellant's premises and had observed several G. I. cans therein, of the same type as those found in the Plymouth. Deputy Hyche testified he had also looked into the coal house on several other occasions prior to the night in question, and sometimes he would see G. I. cans therein, and sometimes the cans would not be there.

The evidence presented by the appellant in general constituted a complete contradiction of the evidence presented by the State.

As a witness in his own behalf the appellant denied that he even knew Ellison on 1 June 1958, and perforce had not seen him at his home as testified to by the officers.

He further testified that on the night in question he had driven over to one Hubbard's house, some seventeen miles away, to return ten jacket cans to Hubbard which he had borrowed over a year before. He used these cans to keep fuel oil in, and stored them in his coal house. The cans were round, and old and rusty.

On direct examination the appellant denied he had ever had any G. I. type cans in his coal house, but on cross-examination admitted that in a condemnation hearing he had testified that he had at various times found G. I. cans in an alley back of his house, and these he would take and sell.

The appellant further testified that at no time during his trip to or from Hubbard's was he aware of any other car following him until approached by the officers' car.

As stated in Lash v. State, 31 Ala.App. 121, 14 So.2d 235, 238, in the response of the Supreme Court to a question certified by this court:

"* * * and when an act has been committed by one conspirator in furtherance of that common design that is unlawful, all of the conspirators will be subject to trial for the conspiracy to commit the act *or for the act itself as committed* pursuant to that conspiracy. (Italics ours.) * * *

"The foregoing authorities likewise establish the proposition that such unlawful community of purpose entered into as a conspiracy need not be proven by positive testimony. It is rarely so to be shown. It must be determined by the triers of fact from the conduct of the parties and all the relative testimony."

To the same effect see also Pruett v. State, 33 Ala.App. 491, 35 So.2d 115; Maxwell v. State, 34 Ala.App. 653, 43 So.2d 323; White v. State, 37 Ala.App. 448, 70 So.2d 287.

We are clear to the conclusion that the evidence presented by the State was ample in its tendencies to support the conclusion of the jury as evidenced by its verdict of guilty, and to support the judgment entered pursuant to said verdict.

The court, under the evidence, correctly denied appellant's charges which were affirmative in nature, and also appellant's motion for a new trial on those grounds pertaining to the sufficiency of the evidence to support the verdict and judgment.

While no brief was filed in appellant's behalf, we have carefully examined this record.

The court's ruling was invoked a great many times during the presentation of the evidence. In each instance the court's ruling was so patently correct we see no useful purpose in any discussion of them.

The refused charges were likewise refused without error, in that they were covered by the court's oral instructions, or other charges given at appellant's request, or were faulty.

Several objections were interposed to portions of the Solicitor's argument. None of these objections would justify a reversal of this judgment in that either the objections were sustained, and the jury instructed, or they were within the allowable inferences flowing from the evidence.

Affirmed.

CATES, Judge (concurring specially).

Black's guilt certainly can only be that of an aider under Code 1940, T. 14, § 14. In my opinion, the State in its case in chief failed to make out a prima facie showing of his guilt.

Under State ex rel. Attorney General v. Tally, 102 Ala. 25, 15 So. 722, the State was required to show that Ellison, the principal, knew of Black's presence and knew that Black was there to aid him. Ellison thus assured could then more efficiently carry out his felonious end. This was not shown, as I see it, except by surmise from the two men sitting in Black's truck before the two drove separately to Lawrence County.

However, Black, ignoring the poet's warning, wove a tangled web and the jury was entitled to infer that he practiced to deceive.

This testimony, which the verdict has labeled false, silhouetted the illicit implications of the conversation between Ellison and Black and of the circumstance of Black's going into Lawrence County with cans and jugs while Ellison came back with like cans and jugs full of wildcat whiskey, Black coming back empty handed.